**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

UNITED STATES OF AMERICA,      :
      :
    v.      :    Crim. No. 19-90-LPS
      :
FLOYD PUNTER,      :
      :
    Defendant.      :
_____:

David C. Weiss, United States Attorney, and Maureen McCartney, Assistant United States
Attorney, District of Delaware, Wilmington, Delaware.

    Attorneys for the United States

Edson A. Bostic, Federal Public Defender, Janet Bateman, Assistant Federal Public Defender,
and Tieffa N. Harper, Supervisory Assistant Federal Public Defender, District of Delaware,
Wilmington, Delaware.

    Attorneys for Defendant

**<u>MEMORANDUM OPINION</u>**

May 5, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

The Defendant, Floyd Punter ("Punter" or "Defendant"), is a pretrial detainee who intends to enter a guilty plea to a serious drug felony which carries a statutory mandatory minimum sentence of five years incarceration.  Largely due to the impact of the ongoing coronavirus (COVID-19) pandemic, he seeks pretrial release, on the grounds that the current situation constitutes either new material information or a compelling reason.  That is, Punter seeks to "reopen his detention hearing under the Bail Reform Act, 18 U.S.C. § 3142(f)(2)," and asks that the Court "enter an Order granting his release on strict conditions because the COVID-19 pandemic is a significant change in circumstances since his detention hearing," which occurred in July 2019.  (D.I. 27 at 5)

For the reasons explained below, the Court will deny Punter's motion.

## BACKGROUND

Punter was indicted by a grand jury on July 11, 2019 on a charge of possession with intent to distribute 280 grams or more of a substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A).  (D.I. 2)  The government moved to detain him pending trial.  (*See* D.I. 6)  After a hearing on July 23, 2019, Magistrate Judge Fallon granted the government's motion and detained him.  (*See* D.I. 9) ("Detention Order" or "Det. Ord.")

The parties later advised the Court that they had negotiated a plea agreement. Accordingly, on March 3, 2020, the Court scheduled a change of plea hearing for March 20, 2020.  (D.I. 23)  On March 16, 2020, however, the Court cancelled the change of plea hearing (D.I. 24), consistent with the Standing Order the Court entered soon thereafter, entitled "In Re:

1

Court Operations Under the Exigent Circumstances Created By COVID-19," which, among other things, cancelled all change of plea hearings through at least April 30, 2020.[1]  On April 15, 2020, the parties filed a joint status report, indicating that Defendant still intends to enter a plea of guilty, and requesting an in-court hearing to allow him to do so.  (D.I. 25 at 2)[2]

On April 20, 2020, Punter filed his pending Emergency Motion for Pretrial Release.  (D.I. 27) ("Motion" or "Mot.")  The government responded in opposition on April 23, 2020.  (D.I. 29) ("Resp.")  The Court heard argument on the motion (by teleconference) on May 1, 2020.  (*See* Transcript ("Tr."))

## LEGAL STANDARDS

Based on the serious drug charge pending against Defendant, the law presumes that "no condition or combination of conditions of release will reasonably assure the appearance of the person [i.e., Defendant] as required and the safety of the community."  18 U.S.C. § 3142(e)(3).  It is Defendant's burden to rebut this presumption.  *See United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986).  However, the parties here agree (*see* Tr. at 10-11, 20) that the burden to prove that no combination of conditions will reasonably assure Defendant's appearance and protect the safety of the community rests on the government.

In evaluating whether to detain, the Court is required to consider:

> (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community

---

[1] *See* www.ded.uscourts.gov/sites/ded/files/StandingOrder-3-18-20-Court%20Operations.pdf.

[2] The parties are in agreement that, at this time, proceeding with a change of plea hearing by videoconference is not advisable "given the defendant's age and intellectual challenges." (D.I. 25 at 2)

> ties, past conduct, history relating to drug or alcohol abuse, and
> criminal history; and (4) the nature and seriousness of the danger to
> any person or the community that would be posed by the
> defendant's release.

*United States v. Delker*, 757 F.2d 1390, 1398-99 (3d Cir. 1985) (citing 18 U.S.C. § 3142(g))

Applying these standards in July 2019, the Magistrate Judge detained Punter pending trial. (*See* Det. Order)  Therefore, Punter's pending Motion arises under two different provisions of Section 3142.

First, Punter moves pursuant to § 3142(f)(2)(B), which provides that an order of pretrial detention may be reopened any time before trial "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

Second, and alternatively, Punter moves pursuant to § 3142(i), which provides that a Court may order the "temporary release" of a pretrial detainee "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense *or for another compelling reason*" (emphasis added).

## DISCUSSION

### I.    All Of The Facts Originally Supporting Punter's Detention Still Support Detention

As noted, Punter had a detention hearing before Judge Fallon on July 23, 2019.  At the conclusion of the hearing, Judge Fallon entered an order of detention, finding (among other things):

> The 63-year-old Defendant has a criminal history dating back to
> age 16.  The history includes 19 arrests and 9 of them were drug-

3

related felonies.  The Defendant has two felony convictions for offenses involving crack cocaine.  The instant charges arise from a traffic stop which occurred when the Defendant returned from New York in a vehicle in which more than 488 grams of crack cocaine was discovered.  A search warrant executed at Defendant's residence revealed approximately $2,500.00 in currency.  The Defendant had been under surveillance by law enforcement who observed him leaving the rear of his residence numerous times and meeting with individuals on side-streets and in alleys, engaging in what appeared to be hand-to-hand drug transactions.  The nature of the drug offenses for which the Defendant is indicted pose significant concerns for the safety of others and the community if Defendant was released.  The court finds there are no conditions that could be imposed to deter him from engaging in drug transactions near his home and community.  The Defendant has a history of drug use, including marijuana and cocaine, however he states that he last used drugs five years ago.  He has used four alias names and has four different social security numbers.  The Defendant's use of aliases suggests that he seeks to avoid compliance with law enforcement and court orders and is, therefore, a potential flight risk who may not appear for further court proceedings.

(Det. Order at 3)[3]

All of the factors identified in the Detention Order as supporting pretrial detention continue to support detention.  The Defendant has repeatedly committed serious drug offenses and has most recently been observed engaging in what appear to be multiple hand-to-hand drug transactions near his home.  Continued engagement in the illegal drug trade poses a danger to the community.  Defendant has previously failed to appear at court proceedings and has used aliases and multiple social security numbers.  These facts establish he is a risk of flight.

As the government correctly observes, the "only new information offered by Punter is the current COVID-19 outbreak."  (Resp. at 8)  The Court now turns to addressing why that new

---

[3]According to the Pretrial Services Report, Defendant's criminal record also includes one prior failure to appear in Delaware and two prior failures to appear in New York.

4

information does not warrant the relief Punter requests.

## II.     No Material New Information Warrants Punter's Release (§ 3142(f)(2)(B))

The first basis for Punter's Motion is that "[t]he pandemic is a significant change in circumstances."  (Mot. at 8)  He argues that this change is new information, not known at the time of his July 2019 detention hearing, which "has a material bearing on" whether conditions can be crafted that reasonably assure his appearance and the safety of other people and the community.  35 U.S.C. § 3142(f)(2)(B).  The Court disagrees with Punter.

As an initial matter, the pandemic does not, of course, change Punter's criminal history, the surveillance and other drug-related evidence against him, his prior failures to appear in Court, or his use of aliases and multiple social security numbers.  In light of that evidence, it is difficult (though not impossible) for "new evidence" to have a "material bearing" on whether adequate release conditions could be reasonably imposed.  Here, the pandemic and its impact do not suffice.

Punter contends that the effects of COVID-19 at the FDC are materially new information that should lead to his release.  Among the FDC-related concerns he raises are the following: (i) "inmates are, by design, stacked on top of each other in a box-like structure;" (ii) "[i]nmates are currently on a 23-hour lockdown per day;" (iii) "[w]hen inmates are allowed out of their cells, they wait in line to use the phone or computers . . . [and] wait in line for meals . . . [and] showers," but during these (and other) times "[s]ocial distancing is not routinely practiced or enforced;" (iv) "not all . . . guards and staff wear PPE [personal protective equipment];" (v) only "a small percentage" of inmates wear masks; and (vi) "legal and social visits have been

suspended." (Mot. at 6-7)[4]  While the Court does not minimize Punter's concerns, the record

evidence supports a finding that officials at the FDC are taking reasonable and prudent steps to

prevent the spread of coronavirus within the facility and, to date, the best available evidence

suggests that their efforts have largely been successful.  *See generally United States v. Raia*, 954

F.3d 594, 597 (3d Cir. Apr. 2, 2020) ("[T]he mere existence of COVID-19 in society and the

possibility that it may spread to a particular prison alone cannot independently justify

compassionate release, especially considering BOP's statutory role, and its extensive and

professional efforts to curtail the virus's spread."); *United States v. Roque Valdez*, Cr. Act. No.

17-47-LPS-2 D.I. 255 (D. Del.) (government updating Court that as of May 1 two staff members

at FDC had tested positive).  Nothing about the current conditions at the FDC, or how those

conditions have changed since July 2019, materially alters the analysis of whether Punter should

be released.

 Punter further contends that his age and health conditions place him "at higher risk of

severe illness from COVID-19" and, in fact, put "[h]is life . . . on the line." (Mot. at 7)  He is

now 64 years-old and "has been diagnosed with diabetes, Hepatitis C, hypertension, obesity . . .

and sleep apnea." (Mot. at 7)  He adds that he also suffers from asthma and does not have access

to an inhaler. (*See id.*)

 Even assuming Punter has asthma,[5] the combination of Punter's health conditions and age

---

 [4]*See also* Resp. at 3-6 (detailing efforts BOP generally, and FDC specifically, have
undertaken to manage risk of COVID-19); *see also United States v. Stevens*, 2020 WL 1888968,
at *2 (E.D. Pa. Apr. 16, 2020) (same); www.bop.gov/coronavirus/index.jsp (last visited May 4,
2020).

 [5]The parties dispute whether Punter actually has asthma and have submitted much
evidence and argument relating to that portion of their disagreement. (*See, e.g.*, Tr. at 4, 16; D.I.

do not constitute materially new information that alters the Court's conclusion that Punter should remain detained pending trial.  As the Third Circuit recently stated in the context of a defendant's request to postpone his date of self-surrender to begin his incarceration, "the existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."  *United States v. Roeder,* 2020 WL 1545872, at *3 n.16 (3d Cir. Apr. 1, 2020); *see also United States v. Robinson*, Cr. Act. No. 19-371 (E.D. Pa. Apr. 21, 2020) (denying release, under § 3142(i), of asthmatic inmate at FDC who was charged with serious drug offense).  At bottom, Punter's medical conditions and age do not now mean there are release conditions that could be imposed that would reasonably assure his appearance in Court and the safety of the community.

Punter contends he is not a flight risk, as evidenced by the fact that he was free on bail for four months prior to adoption of his case by the federal government.  (*See* Mot. at 9)  He also points to the fact that he has lived in the community for more than three decades and has a wife and a home in the District to which he can return.  (*See id.* at 11)  He adds that "the pandemic has reduced traditional concerns about flight risk."  (*Id.* at 9)  The Court is not persuaded.  All of the Punter-specific factors were already considered by the Magistrate Judge and the Court agrees with her analysis.  And Punter's speculation – that the difficulty and heightened health risks associated with travel today mean he is less likely to flee – is no more plausible than the contrary

---

29 at 13-14)  The Court agrees with the government that the record fails to demonstrate that Punter suffers from asthma.  While Punter has a prescription for an inhaler, the record does not show that he received it to treat asthma.  (*See* D.I. 27 at 5)  Further, Punter's FDC medical records do not include an asthma diagnosis or any complaints of breathing problems, despite him regularly obtaining medical treatment while detained.  (*See generally* D.I. 34; D.I. 29 at 13-14) To the contrary, on January 13, 2020, Punter's respiratory system is reported to have been "Within Normal Limits."  (D.I. 34 at 11)

speculation that potential reduced law enforcement and supervisory efforts may make flight appear more attractive to Punter.

Finally, Punter contends that his "high-risk health conditions and continued detention during a worldwide public health crisis presents a far greater risk of danger than his release on strict conditions." (Mot. at 11)  He points to courts that have found that "the presumption of detention as to dangerousness has been rebutted due to the COVID-19 health crisis." (Mot. at 9) (citing *United States v. Davis*, 2020 WL 1529158, at *5 (D. Md. Mar. 30, 2020)).  At least in connection with Punter, the Court does not agree.  While it may be that a defendant would, upon release, be deterred from dealing drugs by the fear that he might contract COVID-19 through contact with suppliers and customers (and, if caught, be sent back to a facility he finds unduly dangerous),[6] it might also be that a defendant would perceive a market opportunity from reduced competition and a lessened law enforcement presence and, therefore, be encouraged to deal drugs.  Given Punter's lengthy history of illegal drug distribution, the Court is not persuaded that it could craft conditions that would reasonably assure he would not again turn to drug dealing if released.

## III.   No Compelling Reason Warrants Punter's Temporary Release (§ 3142(i))

The second basis for Punter's Motion is that "[t]he pandemic is . . . a compelling reason for release." (Mot. at 5)  This portion of the Motion basically asks the Court to follow cases that have found that the COVID-19 pandemic is a compelling reason for temporary release. (*See* Mot. at 12-13) (citing cases)  The Court is not persuaded by Punter's argument.

---

[6]Punter argues that his "life is at risk, creating a powerful incentive for him to abide by the conditions the Court may impose.  Any violation means return to the facility that is currently jeopardizing his health." (Mot. at 15)

8

All of the reasons Punter (as reflected in the opinions he cites) gives for why the Court should find that the pandemic, as well as its impact on the FDC and on him, constitutes a compelling reason for temporary release, have already been addressed above, in connection with his request under § 3142(f)(2)(B). His evidence and argument fare no better in the context of § 3142(i). Accordingly, his Motion will be denied.

## IV.     Punter Has Failed To Propose A Reasonable Release Plan

There are additional deficiencies to Punter's request. He asks that the Court "plac[e] him on home detention at his Wilmington home, with his wife acting as custodian, and order him to comply with all location monitoring requirements as directed by the United States Probation Office." (Mot. at 14) However, as the government observes, this is not "an adequate plan of release." (Resp. at 17)

The home environment to which Punter seeks to return is the very same home where he engaged in the alleged criminal conduct for which he has been indicted and to which he is prepared (for at least some portion of the alleged conduct) to plead guilty. It is an environment in which, despite whatever release conditions the Court may impose, Punter poses a danger to the community. (*See generally* Resp. at 16) ("He proposes to return to the same location from which he dealt significant quantities of crack cocaine, after previously having been convicted *twice* of felonies for dealing crack cocaine.")

Similarly, Punter proposes that his wife act as a custodian. But Punter lived with his wife at the time he allegedly engaged in the conduct to which he seems ready to plead guilty, which suggests that appointing her as custodian would not be a sufficient deterrent against future criminal conduct. Additionally, Punter's wife is an essential worker at an assisted living facility.

9

So she is not at home much of the time, reducing her ability to supervise Punter.  Moreover, she

(like all of us) brings the potential of infection into her home, presenting a risk for Punter (even

with the efforts Punter says he would take to be physically separated in the home, *see* Tr. at 7-8).

And having Punter in the same home may raise the risk that his wife will contract the virus, and

potentially then spread it to her place of work, with potentially tragic consequences.

Thus, again, the Court will deny Punter's Motion.

## CONCLUSION

The government acknowledges, as it must, "[t]here is no question that COVID-19 is a

highly infectious and potentially fatal disease, such that the current pandemic described in the

defendant's motion has led to extraordinary restrictions in the lives of every American in an

effort to combat it."  (Resp. at 3)  The Court is sympathetic to the concerns Punter raises in his

Motion and sincerely hopes he will remain healthy and well during the remainder of his pretrial

detention.  In the Court's view, Punter can be – and, as far as the record reveals, is being – held at

FDC in a manner that is safe and protects his health, at least as well as it would be protected in

the non-custodial setting he requests.  All of the other reasons that supported his detention in July

2019 remain supportive of such a result at this time.

The Court stands ready to proceed to a change of plea hearing (and ultimately sentencing)

as expeditiously as possible consistent with the interests of public health and safety.  The Court

will direct the parties to meet and confer and submit a joint status report so that further

proceedings can be scheduled in a timely manner, giving due consideration to the challenges

posed by the pandemic.

An appropriate order follows.