IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>FLOYD PUNTER,<br><br>    Defendant. | Crim. No. 19-90-LPS |

David C. Weiss, UNITED STATES ATTORNEY, Wilmington, DE

Maureen McCartney, ASSISTANT UNITED STATES ATTORNEY, Wilmington, DE

    Attorneys for Plaintiff

Edson A. Bostic, FEDERAL PUBLIC DEFENDER, Wilmington, DE

Janet Bateman, ASSISTANT FEDERAL PUBLIC DEFENDER, Wilmington, DE

    Attorneys for Defendant

**MEMORANDUM OPINION**

December 29, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

I. **INTRODUCTION**

The Defendant, Floyd Punter ("Punter" or "Defendant"), is a pre-trial detainee who intends to enter a guilty plea to a serious drug felony which carries a statutory mandatory minimum sentence of five years of incarceration. (*See* D.I. 2) (indictment charging Defendant with possession with intent to distribute 280 grams or more of a substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)) Due to the ongoing coronavirus pandemic, Punter has been unable to enter that plea. Punter's change of plea hearing has been rescheduled at least four times.

After a hearing on July 23, 2019, Magistrate Judge Fallon granted the government's motion to detain Punter pending trial, and he has been detained ever since. (*See* D.I. 9) On May 5, 2020, the Court denied Punter's motion to reopen his detention hearing and order his release. (*See* D.I. 36, 37) Since May 5, 2020, the parties have filed monthly joint status reports, each of which indicates that Punter still intends to enter that guilty plea. (*E.g.*, D.I. 38, 40, 42, 44, 46) A change of plea hearing is now scheduled for January 14, 2021 (approximately two weeks from the date of this order). (D.I. 54)

On December 9, 2020, Punter filed a Motion for Consideration of Bail Pursuant to the Bail Reform Act, 18 U.S.C. § 3141(f)(2) and Order of Court in *Brown, et al. v. Warden Kevin Pistro*, No. 20 CV. 1914-AB, EDPA. (D.I. 50) ("Motion" or "Mot.") In this latest Motion, Punter again seeks release from detention. In essence, Punter asks this Court to find that, unlike in May 2020, "[t]he specter of a COVID-19 outbreak" at the Federal Detention Center in Philadelphia ("FDC"), where he is currently being held, "has become real." (Mot. at 3) The government opposes Punter's Motion. (*See* D.I. 53) ("Response" or "Resp.")

## II. LEGAL STANDARDS

Punter moves for reconsideration under 18 U.S.C. § 3141(f)(2), "which provides that an order of pretrial detention may be reopened any time before trial 'if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.'" (D.I. 36 at 3) (quoting 18 U.S.C. § 3141(f)(2))

Punter also relies on an order of the Eastern District of Pennsylvania in *Brown v. Pistro*, 20-cv-1914-AB, D.I. 134 (E.D. Pa. Nov. 19, 2020) (Mot. Ex. A), which provides that any detainee at the FDC may "request judicial review of the detainee's continued custody based on any medical condition that puts him/her at increased risk of severe illness were he/she to contract COVID-19." (*Id.*) In her order, Judge Brody noted, "[t]he fact that a detainee presents a condition that is a CDC-identified risk factor related to COVID-19 does not assure relief. The Court must consider all pertinent provisions in the Bail Reform Act, 18 U.S.C. § 3141 et seq., in determining whether detention is required and/or warranted in each particular case." (*Id.* at 2) Accordingly, the Court has also considered Punter's request for release under 18 U.S.C. § 3142(i), which permits "temporary release" of a pretrial detainee "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

## III. DISCUSSION

In its May 5, 2020 order, the Court outlined the facts that justified Punter's detention as of the July 23, 2019 detention hearing. (D.I. 36 at 3-5) The Court also found that the same facts remained true and continued to support the decision to order Punter detained pending trial, even considering the additional new fact of the emergence of the novel coronavirus, COVID-19, and

its impact in society. (*Id.*) The Court reiterates and incorporates by reference each of these findings from its May 5, 2020 opinion and order.

Nothing Punter presents in his new Motion leads to a different conclusion. Punter argues that "[s]ince early November 2020, FDC-Philadelphia has become a hotbed for COVID-19 infections" and notes that in approximately the month preceding November 30 "209 inmates and 30 staff members tested positive for the virus." (Mot. at 2) However, as the Court noted in its May 5, 2020 decision, "the pandemic does not, of course, change Punter's criminal history, the surveillance and other drug-related evidence against him, his prior failures to appear in Court, or his use of aliases and multiple social security numbers." (D.I. 36 at 5) Despite the unfortunate increases in positive cases of coronavirus at FDC, all of these facts about Punter and his history remain true – and continue to leave the Court unable to find that any combination of release conditions could reasonably assure the safety of the community and that Punter will appear for all further proceedings. The Court does not minimize Punter's concerns, but the record demonstrates that authorities at FDC are continuing to undertake necessary and prudent steps to manage COVID-19 as best as can reasonably be accomplished. (*See generally* Resp. at 6-8) Fortunately, it appears that these efforts have been largely successful, as the record indicates that while there were about 200 positive cases as of November 30 (*see* Mot. at 2) there were only 8 as of December 10 (*see* Resp. at 8).

The Court further agrees with the government's contention that "[w]hile the present conditions of restricted social and legal visits and lockdown measures are not optimal, they reflect the FDC's ongoing commitment to controlling the impact of COVID-19. Although the government does not doubt the short-term challenges to defendants coping with these

containment measures, ultimately, these restrictions do not have a material bearing on the issue of Mr. Punter's dangerousness and/or flight risk." (Resp. at 8)

Punter also seeks release on the basis of his race (African American), age (65), and health conditions (diabetes, obesity, asthma, hypertension, hepatitis C, and sleep apnea). (Mot. at 3) In May, the Court considered "Punter's medical conditions and age" and found they "do not now mean there are release conditions that could be imposed that would reasonably assure his appearance in Court and the safety of the community." (D.I. 36 at 7) Punter sets forth no evidence with respect to his age or health that was not already considered by the Court in May, so the Court adopts and incorporates its May findings here. A fact to which Punter points for the first time is his race. However, as the government points out, he offers no evidence that at FDC he is being treated differently from detainees of other races. (*See* Resp. at 5-6) More generally, he does not explain how race can or should have a "material bearing" on the release decision. 18 U.S.C. § 3142(f).

Finally, to the extent Punter's motion should be viewed as being a request for temporary detention under § 3142(i), it fares no better, as the impact of the pandemic on the FDC – without more – is not itself a "compelling reason" for release. *See, e.g., United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also* D.I. 36 at 10.

An additional deficiency to Punter's Motion is that it fails to provide a specific and appropriate release plan. The Motion asks that "the Court enter[] an Order releasing him from detention and placing him on in-home detention with conditions, including electronic monitoring and any other conditions this Court finds appropriate." (Mot. at 4) He proposes that his sister be

"third party custodian" and that he reside at her address. (*Id.*) As the government notes, however, "Mr. Punter offers no concrete plan apart from more of the same, supervision by someone who is not an 'appropriate person' into whose custody Mr. Punter should be released. He suggests that he should be released to his daughter's home, but, offers nothing more than an address. It is not known how old his daughter is, whether she lives alone or with others, whether she is employed, whether she has a criminal record. . . . Further, there is nothing in the record indicating the risk of COVID-19 transmission at this location would be less than that at the FDC." (Resp. at 10)

For all of these reasons, the Court will deny Punter's Motion.

## IV. CONCLUSION

The Court is sympathetic to the concerns Punter raises in his Motion and that Judge Brody acknowledged in her order in *Brown*. The Court remains convinced, however, that Punter can be (and is being) held safely at FDC Philadelphia, notwithstanding the challenges that the national coronavirus emergency has posed. All of the reasons that supported Punter's initial July 2019 detention remain supportive of the same result today, despite the impact of the pandemic.

An appropriate order follows.